IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHN LLOYD SPRADLEY,

               Plaintiff,             2:11-cv-1142-TC

           v.                     FINDINGS AND
                                         RECOMMENDATION

STATE OF OREGON,
et al.,

               Defendants.

COFFIN, Magistrate Judge.

    Plaintiff, an inmate in the custody of the Oregon Department of Corrections filed a complaint under 42 U.S.C. § 1983 alleging that defendants violated his rights under the Eighth Amendment by assaulting and injuring him, by denying him adequate medical care and violating his right of access to the courts.

    Defendants now move for summary judgment (#44). On July

13, 2012, plaintiff was sent a Summary Judgment Advice Notice (#49). However, plaintiff has not filed a response to defendants' motion.

The relevant facts are set forth in defendants' memorandum (#45) at pages 2 - 4, and supported by the affidavits of Micahel Payne (#46), William King (#47) and Michael Pinson (#48). Plaintiff has not disputed any of the facts set forth in defendants' memorandum and affidavits.

The Eleventh Amendment bars plaintiff's claims against the State of Oregon and plaintiff's claims against the individual defendants in their official capacities.

The Supreme Court has repeatedly stated that a state or its officials or agencies may not be sued by private individuals in federal court unless the state has unequivocally consented to that action, or Congress has unequivocally expressed its intent under the Fourteenth Amendment to waive the immunity of the States. Board of Trustees of University of Alabama v. Garrett, 531 U.S. 356 (2001); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996); see also, Quern v. Jordan, 440 U.S. 332 (1979); Edleman v. Jordan, 415 U.S. 651, 673 (1984); Pennhurst State School and Hospital v. Halderman, 465 U.S. 89 (1984). The Eleventh Amendment otherwise bars any such action regardless of the nature of the relief sought. Cory v. White, 457 U.S.

85 (1982); Brooks v. Sulpher Springs Valley Elec. Co-Op, 951 F.2d 1050, 1053 (9th Cir. 1991). In addition, a state's waiver of sovereign immunity in its own court's does not waive its Eleventh Amendment immunity in federal court.   Edleman v. Jordan, supra.   Thus, the enactment of the Oregon Tort Claims Act did not waive the State of Oregon's Eleventh Amendment immunity.

Individual defendants share in the Eleventh Amendment immunity afforded states and state agencies where the individuals are sued in their official capacities because such suits "are, in essence, actions against the government entity of which the officer is an agent." Mitchell v Los Angeles Community College Dist., 861 F.2d 198, 201-02 (9th Cir. 1999). Under the "arm of the state" doctrine, a state entity and its officers in their official capacities share the state's sovereign immunity because "'the state is the real party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials [or state entities] are nominal defendants.'" Durning v. Citibank, N.A., 950 F.2d 1419, 1423 (9th Cir. 1991) (quoting Ford Mtor Co. V. Dep't of Treasury, 323 U.S. 459, 464 (1945)).   A suit against a state officer in his official capacity is effectively considered a suit against the official's office, and therefore, it "is no different than a suit against the State itself." Will v.

<u>Michigan Dep't of State Police</u>, 419 U.S. 58, 71 (1989).

Thus, Defendant State of Oregon is entitled to judgment as a matter of law as to plaintiff's claims against it. Similarly, the individual defendants are immune from suit and entitled to judgment as a matter of law to the extent plaintiff seeks to hold them liable in their official capacities.

Plaintiff apparently seeks to hold defendant Nooth liable on a theory of *respondeat superior.* However, to establish a § 1983 claim against an individual defendant, a plaintiff must establish personal participation by the defendant in the alleged constitutional deprivation. <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009). It is well settled that <u>respondeat superior</u> is not a proper basis for liability under 42 U.S.C. § 1983. <u>Monell v. Dept. of Social Services of City of New York</u>, 436 U.S. 658, 691-694 (1978); <u>Rizzo v. Goode</u>, 423 U.S. 362, 375-76 (1976); <u>King v. Atiyeh</u>, 814 F.2d 565, 568 (9th Cir. 1987). Absent an allegation that the named state officials were personally involved in the alleged deprivation of constitutional rights, a complaint under 42 U.S.C. § 1983 does not state a claim. <u>See</u>, <u>Boddie v. Coughlin</u>, 583 F. Supp. 352, 356 (S.D.N.Y. 1984); <u>Tunnell v. Office of Public Defender</u>, 583 F. Supp. 762, 767 (E.D. Pa. 1984); <u>Black v. Delbello</u>, 575 F. Supp. 28, 30 (S.D.N.Y. 1983); <u>Knipp v.</u>

Winkle, 405 F. Supp. 782, 783 (N.D. Ohio 1974). A supervisor may be liable based on his or her personal involvement in the alleged deprivation, or if there is a sufficient causal connection between the supervisor's alleged wrongful conduct and the alleged deprivation, Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989), but a "supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989), citing Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 680-81 (9th Cir. 1984). See also, Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (supervisory liability only when a) actual or constructive knowledge of a pervasive and unreasonable risk of injury; b) deliberate indifference to or tacit authorization of the practice; and c) an affirmative causal link between inaction and the injury). Supervisory officials may also be liable if they "implement a policy so deficient that the policy `itself is a repudiation of constitutional rights' and is `the moving force of the constitutional violation.'" Redman v. County of San Diego, 924 F.2d 1435, 1446 (9th Cir. 1991), cert. denied, 112 S. Ct. 972 (1992) (quoting Hansen v. Black, supra, 885 F.2d at 646, in turn quoting Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir. 1987); see also, Jane Doe A v. Special

School District, 901 F.2d 642, 645 (8th Cir. 1990)("The individual defendants are subject to personal liability only if it can be proved that they: 1) received notice of a pattern of unconstitutional acts committed by subordinates; (2) demonstrated deliberate indifference to or tacit authorization of the offensive acts; 3) failed to take sufficient remedial action; and 4) that such failure proximately caused injury.").

In this case, plaintiff apparently names defendant Nooth as a defendant solely because of his supervisory role. Plaintiff has not alleged any facts that would subject defendant Nooth to liability under the principles discussed above.   Accordingly, defendant Nooth is entitled to judgment as a matter of law.

Plaintiff alleges in Claim I that on November 25 (2010) defendant Pinson used excessive force to remove his wrist restraints causing an injury to plaintiff's wrist, finger and hand.  Complaint (#2) p. 3.  Plaintiff further alleges that defendant Payne was present "and did not stop this assault." Id.

The uncontradicted declaration of defendant Pinson establish that on November 25, 2010, plaintiff refused to cooperate with staff in the removal of his wrist restraints. Defendants Pinson and Payne went to plaintiff's cell to remove the restraints. Plaintiff backed up to the door to have his

wrist restraints removed through the "cuff port" in the cell door. Defendant Pinson held the tether attached to the restraints while defendant Payne removed the restraints. When defendant Payne removed the restraint from plaintiff's right wrist, plaintiff quickly pulled his right hand into the cell. Defendant Pinson ordered plaintiff to return his right hand to the cuff port, but plaintiff refused. Plaintiff then attempted to pull his left hand into the cell with the wrist restraint and tether still attached. Defendant Pinson then pulled plaintiff's left wrist back to the cuff port and applied upward tension so plaintiff could not pull the wrist restraint into the cell. Pinson ordered plaintiff to put his right hand back in the cuff port, but plaintiff refused. Pinson then took hold of the two middle fingers on plaintiff's left hand and applied "slight pressure" while ordering plaintiff to put his right hand in the cuff port. Plaintiff complied with the order and the wrist restraints were reapplied. Plaintiff was then escorted from his cell to the Disciplinary Segregation Unit (DSU) intake. While being escorted, plaintiff screamed at and threatened Officer Pinson. Declaration of Michael Pinson (#48) p. 2-3.

When considering a complaint that excessive force was used in violation of the Eighth Amendment, "the core judicial inquiry is ... whether force was applied in a good faith

effort to maintain or restore discipline, or maliciously and sadistically to cause harm.  Hudsn v. McMillian, 503 U.S. 1, 6-7 (1992).  Factors relevant to the analysis include: (1) the need for application of force; (2) the relationship between the need and the amount of forced that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of the forceful response.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003) (quoting Hudson, 503 U.S. at 7.  In considering use of force measures, courts should afford prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Whitley v. Albers, 475 U.S. 312, 321-22 (1986).

In this case, the un-controverted evidence establishes that force was needed to maintain order resolve a dangerous situation with a combative inmate.  Defendant Pinson's attempt to resolve the situation with non-force alternatives (ie. verbal commands) were not successful.  Only then did defendant Pinson apply a reasonable amount of force gain control of plaintiff.  The force used inflicted de minimis injury, if

any.

The undisputed facts of record establish that the force used in this situation was appropriate and reasonable under the circumstances and was clearly applied in a good faith effort to maintain and restore order. There are no facts to suggest that the force or amount of force was applied maliciously and sadistically to cause harm. Defendants are entitled to judgment as a matter of law as to plaintiff's Claim I.

In Claims II and IV (the claims are substantially identical), plaintiff alleges that on "November 25, I received a broken hand from assault in D.S.U. and medical would not take me to be x-rayed for over 30 days." Plaintiff further alleges that "[t]his serious delay was a malpractice." *Id.*

The Declaration of William King states that during an episode of "aggressive behavior" on November 25, 2010, plaintiff "drew back his right hand and struck the cell window with his closed fist." Declaration of William King (#47) p. 2. The King Declaration further states that "Inmate Spradely was afforded medical attention for his injuries." *Id.*

In order to prevail on a 42 U.S.C. § 1983 claim that medical treatment has been denied or inadequately rendered, a prisoner must establish that there has been a "deliberate indifference to [his] serious medical needs." <u>Estell v.</u>

Gamble, 429 U.S. 97, 104 (1976); Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000); see also, Clements v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).

A determination of "deliberate indifference" requires an examination of two elements: 1.) The seriousness of the prisoner's medical needs, and 2.) The nature of the defendant's response. McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (overruled on other grounds by WMX Techs., Inc v. Miller, 104 F.3d 1133 (9th Cir. 1997). To find deliberate indifference, "[a] defendant must purposefully ignore or fail to respond to a petitioner's pain or possible medical need." Id. at1060.

Whether a medical condition is serious is ordinarily a question left to physicians, Brownell v. Figel, 950 F.2d 1285, 1291 (7th Cir. 1991) Davis v. Jones, 936 F.2d 971, 992 (7th Cir. 1991), but in general a medical condition is serious if it is life threatening or poses a risk of needless pain or lingering disability if not treated at once. Id., 936 F.2d at 972; see also, Farmer v. Brennan, 511 U.S. 825, 847 (1994).

Medical malpractice, even gross malpractice, does not amount to a violation of the Eight Amendment, see, Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980). Thus, a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment does not

raise a claim under 42 U.S.C. § 1983. Toguchi v. Chung, 391
F.3d 1051, 1058 (9th Cir. 2004). "Rather, to prevail on a claim
involving choices between alternative courses of treatment, a
prisoner must show that the chosen course of treatment 'was
medically unacceptable under the circumstances,' and was
chosen 'in conscious disregard of an excessive risk to [the
prisoner's] health.'" Id, (quoting Jackson v. McIntosh, 90
F.3d 330, 332 (9th Cir. 1996.

Because courts lack medical expertise, "where prisoners
receive some medical attention and the dispute is over the
adequacy of the treatment, federal courts are generally
reluctant to second guess medical judgment." Miranda v. Munoz,
770 F.2d 255, 259 (1st Cir. 1985); Layne v. Vinzant, 657 F.2d
468, 474 (1st Cir. 1985); Toguchi v. Chung, 391 F.3d 1051, 1058
(9th Cir. 2004).

Liability may be imposed only where the decision by the
medical professional is so objectively unreasonable as to
demonstrate that it was not based on professional judgment.
Parham v. J.R., 442 U.S. 584,(1976); Estate of Conners v.
O'Conner, 846 F.2d 1205, 1209 (9th Cir. 1988), cert. Denied,
489 U.S. 1065 (1989).

Plaintiff has not controverted defendant King's statement
that he was "afforded medical attention for his injuries." In
any event, plaintiff has not alleged that any *named defendant*

in this case was deliberately indifferent to his serious medical needs.    Accordingly, defendants are entitled to judgment as a matter of law as to Claim II.

Plaintiff alleges in Claim III that defendant King subjected him to cruel and unusual punishment and violated his rights of access to the courts by removing all of plaintiff's property, " including legal work" from plaintiff's cell.

The undisputed facts of record indicate that defendant King is required to search the cells of DSU inmates at least twice a month.  When defendant King went to plaintiff's cell on February 21, 2011, to conduct a cell search, plaintiff refused to follow defendant Kings orders for his cell to be searched.   Plaintiff became very threatening and aggressive towards defendant King and Sergeant Moura.   As a result, defendant King placed plaintiff on "close supervision." Close supervision is the "placement of an inmate so that he/she is more restricted than other inmates in disciplinary segregation status.   This status is designed for inmates whose actions disrupt the safe and orderly operation of disciplinary segregation."   King Declaration (#47)   p. 4. Due to his threatening behavior, defendant King took all of plaintiff's property from plaintiff's cell. Access to the  property was returned as plaintiff's behavior improved. *Id.*

The Eighth Amendment proscribes punishments which involve

the "unnecessary and wanton infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Gregg v. Georgia, 428 U.S. 153, 173 (1976).   There is a *de minimis* level of imposition with which the Constitution is not concerned.   Ingraham v. Wright, 430 U.S. 651, 674 (1977).   Only those deprivation denying "the minimal civilized measure of life's necessities" are sufficiently serious to form the basis of an Eighth Amendment claim.   Hudson v. McMillian, 503 U.S. 1, 8-9 (1992) quoting Rhodes v. Chapman, supra, and Wilson v. Seiter, 501 U.S. 294, 298 (1991).

Plaintiff has not alleged any facts that would establish that defendant Kings action in temporarily depriving plaintiff of his personal property constituted cruel and unusual punishment under the Eighth Amendment.

In order to establish a violation of the constitutional right of access to the courts a prisoner must establish two things.   First he must show that the access was so limited as to be unreasonable. Lewis v. Casey, 518 U.S. 343, 354 (1996). Vandelft v. Moses, 31 F.3d 794, 797 (9th Cir. 1994).   Second, he must demonstrate that the inadequate access caused him an actual injury.   To establish an actual injury, the inmate must demonstrate a specific instance in which he was actually denied access to the courts.   Id.

In this case plaintiff has not alleged what "legal work"

was confiscated or how the temporary deprivation of the material cause him an actual injury. Therefore, defendants are entitled to judgment as a matter of law as to plaintiff's Claim III.

Plaintiff alleges in Claim IV that "sometime between Dec. 2010 and February 2011" defendant Payne subjected him to "unnecessary force (by) slamming me up against the wall face first" and injuring his arm by using "extreme grip." Complaint (#2) p. 6. Plaintiff further alleges that defendant Payne threatened to "Beat my ass." *Id.*

> The Declaration of Michael Payne states:
>
> 5.    During the period of time, December 2010 through February 2011, I was assigned to the Disciplinary Segregation Unit (DSU) in an escort position. ...
>
> 6.    During this period of time, I escorted Inmate Spradley on several occasions but do not recall the number of times today.
>
> 7.    I do not recall any incident where I personally was required to use force during an escort with inmate Spradley.
>
> 8.    I can say with certainty that I never used excessive force with Inmate Spradley.

Declaration of Michael Payne (#(#46) p. 2 - 3.

As noted above, plaintiff has not responded to defendant's motion for summary judgment or submitted any evidence to controvert defendants' affidavits. Therefore, there is no genuine issue of material fact that defendant

Payne did not use excessive force on plaintiff as alleged in plaintiff's complaint.

The United States Constitution does not impose liability for ordinary trash talk. Oltarzewski, 830 F.2d 136, 139 (9th Cir. 1987) (vulgarity and verbal harassment not actionable); Guat v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) ("[I]t trivializes the eighth amendment to believe that a threat constitutes a constitutional wrong."); see also, Hopson v. Frederickson, 961 F.2d 1374, 1378 (8th Cir. 1992) (racial slur accompanied by threat of violence not actionable).

Therefore, even if defendant Payne did state that he would "beat (plaintiff's) ass," the statement did not violated plaintiff's constitutional rights.

Defendants are entitled to judgment as a matter of law as to plaintiff's Claim IV.

Assuming that defendant Pinson's use of force or defendant Kings conduct in temporarily depriving plaintiff of his personal property violated plaintiff's constitutional rights, I find that defendants are entitled to qualified immunity from liability for such actions.

Officials performing their official duties are entitled to qualified immunity from liability in damages where they did not violate plaintiff's clearly established constitutional rights, Harlow v. Fitzgerald, 457 U.S. 800 (1982); Act

15 - FINDINGS AND RECOMMENDATION

Up!/Portland v. Bagley, 988 F.2d 868 (9th Cir. 1993); *see also*, Anderson v. Creighton, 483 U.S. 635, (1987). The Ninth Circuit has articulated a two part analysis for determining an official's qualified immunity: (1) was the law governing the official's conduct clearly established? [and] (2) Under the law, could a reasonable officer believed the conduct was lawful? Neely v. Feinstein, 50 F.3d 1502, 1507 (1995) (citing Act Up!/Portland v. Bagley, 988 F.2d 868, 871 (9th Cir. 1993)).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001).

Assuming *arguendo* that the facts alleged by plaintiff implicate his constitutional rights, I find that plaintiff has failed to demonstrate that it would be clear to a reasonable correctional officer that the reactive use of minimal force clearly authorized by the Oregon Administrative Rules[1] or the placement of an inmate on "Close Supervision status"[2] would be illegal or violate the inmate's rights.

---

[1]*See* Declaration of Michael Pinson (#48) p. 3-4.

[2] An inmate restriction authorized by the Oregon Administrative Rules, designated for inmates whose actions disrupt the safe and orderly operation of disciplinary segregation. *See* Declaration of William King (#47)

Based on all of the foregoing, I find that there are no genuine issues of material fact remaining in this case and that defendants are entitled to judgment as a matter of law. Defendants' unopposed Motion for Summary Judgment (#44) should be allowed.  This action should be dismissed with prejudice.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.  The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court.  Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

////

////

////

17 - FINDINGS AND RECOMMENDATION

Any appeal form an order adopting this Finding and
Recommendation or Judgment of dismissal would be frivolous and
not taken in good faith.

DATED this ___1st___ day of September, 2012.

THOMAS M. COFFIN
United States Magistrate Judge

18 - FINDINGS AND RECOMMENDATION